# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT TALLAHASSEE DIVISION

### CASE NO:  4:20-cv-00513-WS-MJF

THERESA CINEUS as
PERSONAL REPRESENTATIVE OF THE
ESTATE OF GAMALIEL CINEUS

      Plaintiff,

v.

STATE OF FLORIDA, DEPARTMENT OF
CORRECTIONS, CENTURION OF
FLORIDA LLC.

      Defendant(s),

_____/

## AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

## I.  INTRODUCTION

This is an action brought pursuant to the Common Law of the state of Florida,

Chapter 768.28 of the Florida Statutes, The Eighth Amendment to the US

Constitution and 42 U.S.C. §1983 and §1988 pursuant to Florida Department of

Corrections Negligent Supervision of the Centurion medical staff and the

Deliberate Indifference that Defendant Centurion exhibited toward the medical

needs of the deceased, Gamaliel Cineus.

## II.  JURISDICTION

1. The jurisdiction of this court is predicated upon 42 USC §1983; §1988 and 28 USC
   1331.

## III.  PARTIES

2. The Plaintiff in this case is Theresa Cineus who has brought this action in her
   official capacity as the Personal Representative of her deceased son, Gamaliel
   Cineus' estate.

3. The State of Florida is a Defendant in this matter because events complained about
   herein occurred inside a Florida Department of Corrections facility.

4. The Defendant, Centurion of Florida LLC, hereafter referred to as the private
   medical contractor, provided medical services to inmates confined to the Florida
   Department of Corrections.

## IV.  FACTUAL ALLEGATIONS

5. The Florida Department of Corrections contracted with Centurion of Florida LLC,
   to provide primary medical services to the inmates who are confined to the
   Department's prison facilities. Centurion is tasked with providing the primary
   medical care for the inmates and for referring the inmates out for advance testing
   or treatment when the medical condition of a particular inmate is more involved.

Centurion's initial contract with the Florida Department of Corrections was commenced in 2016. Centurion agreed to provide medical services to Florida Prison inmates that is consistent with the American Correctional Association Standards and consistent with the National Commission on Correctional Healthcare Standards.

6. The contract price of the Centurion initial contract was $267,968,00 per year. The contract was renewed with the Florida Department of Corrections in 2018. The new contract ensured Centurion 1.5 billion dollars.

7. Centurion is a subsidiary of Centene Corporation which is a company based in St. Louis, Missouri. Centene owns various different subsidiaries such as Centurion of Georgia, Centurion of Tennessee, Centurion of Arizona LLC and of course, Centurion of Florida LLC. Each of these entities exist essentially for one reason: to provide contractual health services to the various states inmates who are housed in state prisons.

8. Centurion and its parent company, Centene, has a troubling and a well-established custom and practice of denying or limiting inmates vital and necessary services for the sake of enhancing the company's bottom line. This history is clearly demonstrated by the numerous lawsuits that have been filed against Centurion, or

that are currently pending against Centurion for similar acts as those alleged in this complaint or for more egregious acts.

9. Centurion also has a practice of limiting the amount of staff that is on duty at the prisons on a particular day. In 2016 Centurion was sued by a prisoner in a Tennessee jail who was forced to deliver her child in an unsterilized room and without the assistance of OB/GYN doctor. The suit also claimed that Centurion denied the female inmate the medications that she needed related to the delivery process.

10. In another Tennessee prison case Michael Langston was admitted to the prison infirmary which was operated by Centurion.  The medical staff kept him there for a period of two weeks after he suffered a stroke which caused a brain hemorrhage. The medical staff was aware that Langston was in need of a life-saving medical intervention but they decided to keep him at the prison infirmary to keep the related cost down. When Langston finally was transported to the hospital the paramedics noted that he did not have a pulse. Langston died shortly after arriving at the hospital.

11. Centurion provides medical service for inmates in the New Mexico prison system as well. The family of Adonus Encinias recently brought a Wrongful Death lawsuit against Centurion for denying him adequate services and for failing to make an

effort to come up with an effective treatment plan to treat his severe mental illness. Adonus was provided inadequate medical service that did not comport with the National Commission of Healthcare Standards. Resultantly Adonus hung himself in his cell. Centurion was aware of Encinias' severe mental health problems, but it did not want to incur the cost related to providing him adequate psychological testing and treatment.

12. Four hours prior to the hanging death of Adonus Encinias, an inmate in the same prison hung himself in his cell. Keith Richard Kosirog also suffered from severe mental illness. Prior to his successful attempt to kill himself he attempted suicide 12 times. In the days and the months leading up to Kosirog's death he and his family implored the Centurion medical staff to create an adequate treatment plan to help him deal with his severe mental disturbances. The medical staff inexplicably lowered Kosirog's antipsychotic medications. Not long after his medications was lowered he hung himself in his cell.

13. Another New Mexico inmate, Jerry Sisneros, also filed a lawsuit against Centurion. Sisneros claimed that he presented to the prison clinic complaining about chills and fever, radiating back pain and difficulty urinating. The Centurion doctor failed to do a thorough examination.  Rather Sisneros was only given medicine for a urinary infection. After he was discharged from prison he continued

to experience severe lower back pains and other debilitating symptoms. He went to a local hospital where he was diagnosed with a severe infection of the spine. That infection caused permanent damage to his spine. All together there have been two dozen lawsuits filed against Centurion by New Mexico prison inmates. Most, if not all, of these inmates claimed that Centurion denied them needed medical services and that Centurion has a custom and a practice of providing inmates inefficacious medical care for the sake of enhancing its bottom line.

14. The Human Rights Defense Center filed a lawsuit against Centurion in which it alleged that Centurion was failing to respond to public records request that sought information regarding medical service that is being provided to inmates in the Florida prison system.  Centurion denied the Human Rights Defense Center's allegation but it refused to produce the requested documents.

15. Centurion has also been sued by inmates and the family of inmates that have died in the Mississippi state prisons. The well documented allegations against Centurion's Mississippi operation were so acute that the state of Mississippi decided to end its relationship with Centurion before the contract period officially ended.

16. The most troubling allegations that have been made against Centurion have come from within their own ranks. In December of 2019 Ronda Scott filed a lawsuit

against Centurion, in the Northern District Court for retaliating against her after she reported their violations of the law to state and federal officials. The complaint alleged that Centurion was permitting unlicensed personnel to dispense medicines at the prison pharmacy and that Centurion was engaging in other unlawful actions which resulted in inmates, who were suffering from Hepatitis C, not being provided adequate care. Scott alleged all of Centurions actions were aimed at improving the bottom line.

17. When Scott initially observed the violations she reported them to her managers. Managers at the highest levels directed her to falsify the records to cover up the flagrant and very dangerous violations of the health laws. Scott was instructed to amend her initial report to cover up the violations. When she failed to comply management falsified the records themselves.

18. In 2020, Centurion parent company Centene, was sued by a shareholder of the company, Laura Wood.

19. Wood alleged in paragraph three of her complaint that Centurion has a long history of failing to provide proper healthcare to the prison populations by the various contracts that it has with different prison systems. In paragraph four of the complaint Wood alleged that Centurion provided substandard medical care at Parchman Prison, in Mississippi and other prisons. She also alleged that this

substandard care resulted in increasingly routine deaths of incarcerated individuals and unconstitutionally inadequate medical care.

20. At all times relevant to this lawsuit Defendant Centurion of Florida LLC provided the healthcare for the inmates confined in the Florida State prison system.

21. Centurion Florida LLC has an internal approval process that required the medical providers at the clinics to obtain prior approval when an inmate has to be referred out for testing, surgery or other critical care that cannot be provided at the prison facility. The doctors that are assigned to the various medical clinics were not permitted to directly refer an inmate to an outside medical provider. Rather, all the doctors were required to go through a multi-layered approval process.

22. The quality of medical service that Cineus received in the Polk County Correctional Institute did not depart from Centurion's corporate wide custom. Centurion's outside medical services approval process involves different individuals, some of which are not doctors, nurses or other medical providers. The non-medical providers involved largely make financial determinations regarding whether the related expense connected to a referral an inmate to an outside medical provider is financially justified. The overarching consideration in the referral process is not the health and well-being of the inmate, but rather it is to keep the cost down which in turn increases the profit margins of Centurion.

The deceased, Gamaliel Cineus, was admitted to Polk County Correctional Facility with a scheduled release date of March of 2019.

23. Shortly, after arriving at the facility he began to experience a burning sensation in his stomach and in his throat. He also informed the medical staff that he was experiencing shortness of breath. Thereafter, over the course of five months Gamaliel Cineus made several trips to the clinic complaining of various ailments but he consistently complained about shortness of breath.  Each time he was not tested for medical conditions that could cause a shortness of breath.

24. In addition to complaining to medical staff, he complained to his family when they visited him at Polk County Correctional Institute. He told them that he was experiencing shortness of breath and that he did not believe the medical staff was taking his complaints seriously enough.  He also told his family that the correctional staff accused him of malingering and that they threatened to put him in the box, an isolation cell, if he kept coming to the medical clinic.

25. Gamaliel Cineus requested that his mother contact the Warden and/or the Polk County Correctional Institute medical staff to urge them to perform more diagnostic tests because the problem of shortness of breath was persisting and getting progressively worse.  Theresa Cineus did in fact call the Polk County Correctional Institute and request that her son be given additional medical tests

especially, to check for blood clots.  She informed the medical staff that there was a family history of blood clots and that she was currently taking medication to address her blood clot condition.  Withstanding her urgings, the medical staff did not test Gamaliel Cineus for blood clots.

26. On May 6, 2018 Gamaliel Cineus visited the medical clinic which was staffed by nurses and doctors who are employed by Centurion of Florida LLC. He was seen by an unknown medical staff member. When he presented to the clinic he complained of shortness of breath. The Centurion staff member took no effort to diagnose the nature or the origin of the shortness of breath. After a brief conversation with the medical staff member Cineus was sent back to his cell without receiving treatment for his symptoms.

27. On August 5, 2018, Gamaliel Cineus visited the clinic again complaining about various ailments. As before the clinic was staffed by the medical providers who were employed by Centurion of Florida LLC. The medical provider that saw him that day is identified in his medical records as V. Poonia, RN. Poonia failed to takes steps to specifically pinpoint the medical origin of the various symptoms that Cineus complained about. Additionally, Cineus was not referred to an outside diagnostic care center for further treatment or further evaluation.

28. On August 18, 2018, Gamaliel Cineus visited the clinic complaining about various ailments. The medical provider that saw him that day is identified in the medical records R. Hernandez, RN.  R. Hernandez was a Registered Nurse that was employed by Centurion.

29. On October 18, 2018, Cineus presented to the clinic for an unspecified reason. Cineus was seen by two medical professionals on that day: D. Brown, RN and Dr. L. Ortiz.

30. On, October 23, 2018, Gamaliel Cineus visited the clinic.  He was seen by a medical staff provider who is identified in the medical records as L. Perez, LPN. He did not receive treatment, nor was he referred out for appropriate diagnostic evaluation.

31. On October 30, 2018, Cineus reported to the clinic complaining of shortness of breath. The medical service provider is identified as V. Gonzalez, RN.  Gonzalez marked the visit as routine she took no further action to flesh out the origin or cause of the shortness of breath.

32. On November 1, 2018, Cineus presented to the clinic complaining of generalized weakness and heart palpitations.  The medical provider on that day is identified as

K. Ingrando, RN.  Cineus was discharged back to his dorm without further

treatment and diagnostic testing.

33. On November 9, 2018, Cineus reported to the clinic complaining of shortness of

breath.  The medical records indicate that the medical professional who treated

him/examined him was Gonzalez, RN.

34. On November 14, 2018, Cineus presented to the clinic again complaining of

shortness of breath. He was seen by Gonzalez, RN.  Withstanding the fact that

Cineus was complaining about shortness of breath again, Gonzalez marked the

visit as routine. No follow-up diagnostic testing was ordered.

35. On November 26, 2018, Cineus presented to the clinic again this time he was

complaining about shortness of breath and weakness.  Gonzalez, RN was the

medical service provider.  Gonzalez marked the medical report as a routine visit

and no further diagnostic treatment or action was taken.

36. On December 5, 2018, Cineus reported to the clinic complaining of abdominal

pain.  He was seen by Gonzalez, RN. However, no further diagnostic testing was

done.

37. On December 19, 2018, Gamaliel Cineus went to the prison clinic again.  This

time he complained that the shortness of breath problem was becoming

progressively worse.  He was seen by a medical provider identified only as

Gonzalez, RN. Gonzalez did not refer Mr. Cineus for additional diagnostic

screenings withstanding the fact that Gamaliel Cineus had complained multiple

times before about shortness of breath and generalized weakness.

38. On December 21, 2018, Gamaliel Cineus returned to the medical clinic to report to

them that the Pepcid that they gave him for heartburn was not working and that he

was still having the same medical issues. The medical records indicate that he was

seen by a medical provided identified as Gonzalez. Pepcid was given to the

inmates regularly for symptoms that suggest far more serious morbidity. Again,

Centurion did this for one purpose, to save money. Gonzalez knew or should have

known that the symptoms that Cineus presented with suggested a potentially life

threatening condition.

39. Again on December, 23, 2018, Gamaliel Cineus reported to the medical clinic

with largely the same issues.  He complained about burning in his chest and he was

continuing to experience shortness of breath. He was instructed to remain on the

antacids. The medical provider that saw him on that day is identified in the medical

records as V. Poonia, RN.

40. On December 24, 2018, Gamaliel Cineus blacked out in the chow hall, the

cafeteria. Prior to his blackout, he felt weak and was barely able to walk to and

from the cafeteria.  Cineus was seen in the clinic on this day by two different

medical providers: D. Jarvis, LPN and S. Baker, RN.  He was finally referred to

the medical doctor for follow-up.

41. On December 26, 2018, Gamaliel Cineus collapsed in his cell and remained there

for a period of time while the correctional staff carried on their routine duties.

Gamaliel Cineus' roommate had to alert the correctional staff that there was

medical emergency involving him. Once the correctional staff eventually entered

his call, he was discovered to be lifeless and unconscious by staff he was

transported to the medical unit. The medical staff did not immediately summons

outside emergency medical help. The medical evidence shows that Cineus

experienced medical distress as early as 5:00 am on this day but he was not

transported until 7:53 am. Cineus died later that day.  Dr. L. Ortiz was the

attending physician that day.

42. After his death, the Polk County Medical Examiner's office conducted a complete

autopsy. Overall, Gamaliel Cineus was determined to be in good health.  However,

the cause of death was determined to be due to a pulmonary embolism, a blood clot

in the lungs.

43. The suffering and the subsequent death of Gamaliel Cineus was directly caused by

the policies, customs and the practices of Centurion of Florida LLC. These

customs, practices and policies caused Centurion to consistently ignore or to

provide ineffective medical treatment to Gamaliel Cineus' very serious medical

condition, which was pulmonary embolism.

## V.  CAUSES OF ACTION

### COUNT I

**Violation of Civil Rights Pursuant to
Title 42 U.S.C. §1983 As to Centurion of Florida LLC only
(Deliberate Indifference)**

44. The Plaintiff incorporates by reference as though fully stated herein the allegations

contained in paragraphs of 1-43.

45. Early on in the year 2018 the Department of Corrections was made aware that

Gamaliel Cineus was suffering from a serious medical condition that required

prompt and aggressive medical intervention. The medical staff who were

employees of Centurion, knew that shortness of breath is a symptom that could be

indicative of a myriad of serious medical conditions, some of which are life

threatening. Just before Gamaliel Cineus died, he implored his mother to contact

the Warden to direct Centurion's medical staff to take his deteriorating medical

condition more seriously.  His mother did contact the Warden as well as the

medical staff at the prison.  No actions were taken to address the problem.

46. From May 6, 2018 to December 24, 2018 Gamaliel presented to the medical clinic which was staffed by Centurion medical personnel. He presented time and again complaining of various serious ailments. Most consistently, as laid out in paragraphs 1-43, Cineus complained about an increasing problem of shortness of breath and generalized weakness. He was given antacids by the medical staff and threatened with solitary confinement by the correctional staff for continuing to complain about his worsening medical condition.

47. The medical staff demonstrated a deliberate indifference and a reckless disregard for the demonstrably deteriorating health condition of Gamaliel Cineus. Although he complained about shortness of breath, which was indicative of various serious health conditions, Centurion's medical staff failed to refer him for diagnostic testing outside of the facility. The rationale and the reasoning for the deliberate indifference was that the company cared more about its financial health than it did about the health of the inmates that it contracted to provide medical care to. Resultantly, Centurion refused to refer Cineus out for diagnostic services or to refer him out for interventional treatment. Instead, the medical staff remained focused on preserving the company's bottom line.  They offered Gamaliel Cineus antacids and attempted to intimidate him and to dissuade him from seeking further medical attention.

48. Centurion's treatment of Cineus' shortness of breath was clearly and grossly incompetent. It was also excessively substandard to the point of shocking the conscience. The treatment of Gamaliel Cineus also sharply departed from the National Commission on Correctional Healthcare Standards.

49. On December 26, 2018, the day that Gamaliel Cineus died, the Defendant's correctional and medical staff was aware of his medical distress as early as 5:00 am but EMS services were not summons until 7:53 am, almost three hours after the medical crisis was first known to the Defendants.

50. Gamaliel's medical condition overall, became progressively worse because of the Defendant's inefficacious treatment of his shortness of breath with antacids. His continued shortness of breath is of such a nature that it would have alerted a lay person with no particularized medical training, that Cineus needed immediate medical intervention medical treatment.

51. Although the Centurion medical staff provided Cineus some type of medicine at times such as Zantac, it does not mean that he was ever provided adequate or appropriate medical care. In fact, the level of care that was provided each and every time that he went to the clinic complaining about shortness of breath was so completely substandard that it was the equivalent of him receiving no treatment at all.

52. Centurion's deliberate indifference was the direct and the proximate cause of the suffering and the death of Gamaliel Cineus.

## COUNT II

### Violations of Civil Rights Pursuant to 42 USC 1983 As to Centurion of Florida LLC (Custom and Practice)

53. The Plaintiff incorporates by reference as though fully stated herein the allegations contained within paragraphs 1-43.

54. At all times relevant to this lawsuit Centurion had a custom, practice and policy that placed the health of Florida inmates, as well as all other inmates at various facilities, below the pursuit of corporate profits.

55. As shown by the numerous lawsuits that have been filed and are currently being filed, Centurion's handling of Gamaliel's acute medical condition was consistent with how Centurion treats inmates in every prison that it provided private medical services.  Centurion repeatedly denied Gamaliel adequate and appropriate medical care because it was Centurion's custom to require multiple levels of authorizations before an inmate could be referred out for diagnostic or interventional services. The whole scheme was designed to dissuade Centurion medical staff from referring prisoners outside for potentially costly tests and services.

56. Medical Staff were encouraged to and expected to do whatever it took to keep the cost down for delivering medical services to the inmates. This common design and policy resorted in the needless suffering and unnecessary deaths of several inmates throughout the Florida system, as well as throughout the nation, wherever Centurion was contracted to provide medical services to prisoners.

57. The evidence of Centurions well-established custom of denying needful medical care to inmates is objectively documented by the fact that Centurion has been accused of the same acts which caused Cineus's death in every state where it has been contracted to be a private medical provider. Further, some of Centurion's former employees or shareholders have publicly acknowledged Centurion's custom of placing the pursuit of financial gain above providing adequate and competent medical care to Florida inmates.

58. As the direct and proximate cause of Centurions custom, policies and practices Gamaliel Cineus suffered great, physical and emotional harm. Gamaliel Cineus suffered the ultimate harm, he died because Centurion refused to refer him out for diagnostic and interventional services that Cineus clearly was in need of. Gamaliel Cineus died needlessly and his family loss a beloved member needlessly.

## COUNT III

### Negligent Supervision As to Defendant Florida Department of Corrections only

59. The Plaintiff incorporates by reference as though fully stated herein the allegations contained in paragraphs of 1-43.

60. The Department contracted Centurion of Florida LLC to provide medical services to the inmates who are incarcerated in Florida prison facilities. Because the Florida Department of Corrections delegated the medical treatment of the inmates to Centurion it owed a duty to all inmates, imprisoned in the Florida prison system, to properly supervise the medical services that were being provided by Centurion.

61. The Defendants owed a duty to Gamaliel Cineus to ensure that the private medical contractor provide him with adequate medical attention once it was made aware that he had an emergent medical problem, to wit, he was suffering from persistent shortness of breath, abdominal pain and generalized weakness.

62. The Defendant breached its duty to Gamaliel Cineus, who at all relevant times was an inmate at the Polk County Correctional Institute, by not properly supervising the private medical contractor and thereby permitting it to provide Gamaliel Cineus with wholly infective and inappropriate medical care. Cineus was given antacids

despite the fact that he repeatedly complained about shortness of breath and generalized weakness.

63. Florida Department of Corrections did not require Centurion to abide by the National Healthcare guidelines and it failed to take corrective action against Centurion when it knew that it repeatedly provided grossly inadequate medical care to the individuals incarcerated within the Florida Correctional system.

64. The Defendant was further placed on notice that there was an emergent medical problem with Cineus because his mother called the Polk County Correctional Institute to complain about his ongoing problem with shortness of breath. She complained to medical staff and to the correctional staff that her son's medical condition was getting worse.  She expressly requested that they test her son for blood clots.

65. As a direct and proximate cause of the Department of Corrections negligent supervision of the private medical contractor, Gamaliel suffered extreme physical discomfort, abdominal pain, generalized weakness and an increasing inability to breathe which culminated in his death on December 26, 2018.  An autopsy conducted after his death revealed that the cause of death was a pulmonary embolism.

## **PRAYER FOR RELIEF**

A. The Plaintiff demands all relief that is available under all pertinent Laws of the United States Constitution, federal statutes, the Common Law of the State of Florida and any and all relief that this Court may deem appropriate.

B. Compensation for loss of companionship, emotional pain, anguish and loss of consortium.

C. Reasonable attorney fees and reimbursement of all costs related to maintaining this action.

Dated: December 14, 2020

/s/ ***Jerry Girley***
Jerry Girley, Esquire
FL. BAR # 0035771
THE GIRLEY LAW FIRM, PA
117 E. Marks Street, Suite A
Orlando, FL 32803
Tel: (407) 540-9866
Fax: (407) 540-9867
phyllis@thegirleylawfirm.com

CERTIFICATE OF SERVICE

I CERTIFY that on this 14th day of December 2020 a true and correct copy of the

Amended Complaint was filed using the Clerk of Court CM/ECF filing system and

a copy provided via electronic mail to:

Brian A. Wahl, Esquire, bwahl@bradley.com, Bradley Arant Boult Cummings

LLP, 1819 5th Avenue North, Birmingham, AL 35203 and Jacob B. Hanson,

Esquire, jhanson@bradley.com, 100 North Tampa Street, Suite 2200, Tampa,

Florida 33602.

/s/ ***Jerry Girley***
Jerry Girley, Esquire
FL. BAR # 0035771
THE GIRLEY LAW FIRM, PA
117 E. Marks Street, Suite A
Orlando, FL 32803
Tel: (407) 540-9866
Fax: (407) 540-9867
phyllis@thegirleylawfirm.com